| **Ben-Avraham v Bomze** |
|:---:|
| 2026 NY Slip Op 31055(U) |
| March 18, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 659773/2025 |
| Judge: Joel M. Cohen |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 03M

-----------------------------------------------------------------------------X

SAMUEL BEN-AVRAHAM, CHRISTIAN VISDOMINI,
individually and derivatively on behalf of H.E.S.C. LLC

Plaintiffs,

- v -

HANNAH BOMZE, H. BOM ENTERPRISES, EREZ
ZURUR, ELZ REMASTERED LLC, 3D OF TRIBECA LLC

Defendants.

-----------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 659773/2025 |
| **MOTION DATE** | 12/29/2025 |
| **MOTION SEQ. NO.** | 002 |

**DECISION + ORDER ON MOTION**

HON. JOEL M. COHEN:

The following e-filed documents, listed by NYSCEF document number (Motion 002) 77, 78, 79, 80, 81, 82, 83, 92, 94, 108, 109, 110, 111, 112, 113, 117, 118, 119, 120, 126, 135, 136, 137

were read on this motion for        PRELIMINARY INJUNCTION       .

     This motion arises from an ongoing dispute concerning the management and operation of Casa Blanca, an innovative on-line real estate brokerage launched in 2019.  Here, two of its co-founders Samuel Ben-Avraham ("Mr. Ben-Avraham") and Christian Visdomini ("Mr. Visdomini") (collectively, "Plaintiffs"), suing individually and derivatively, seek preliminary injunctive relief aimed at ensuring access to information and restraining purportedly company-threatening conduct by the other two co-founders Hannah Bomze ("Ms. Bomze") and Erez Zarur ("Mr. Zarur") (collectively, "Defendants") pending the resolution of this action.

     For the reasons set forth below, and after an evidentiary hearing, the Court finds that Plaintiffs have demonstrated a likelihood of success on several of their causes of action, a risk of irreparable harm absent court intervention, and that the balance of the equities weighs in their favor.  Accordingly, Plaintiffs are entitled to a preliminary injunction as described below.

**659773/2025   BEN-AVRAHAM, SAMUEL ET AL vs. BOMZE, HANNAH ET AL**
**Motion No.  002**

**Page 1 of 16**

1 of 16

## FACTUAL AND PROCEDURAL BACKGROUND

H.E.S.C. stands for "Hannah, Erez, Sam, and Chris," the four individuals (and former friends) who co-founded H.E.S.C. Company, LLC (the "Company") in early 2019. According to Plaintiffs' allegations, the Company launched at a valuation of approximately $3.6 million principally based on Mr. Ben-Avraham's opening investment of approximately $1.8 million in return for which he secured 50% of the Company (NYSCEF 43 ["Amend. Compl."] ¶ 34). Ms. Bomze and Mr. Zarur, who are married to each other, founded the business and acquired the remaining 50% interest along with annual salaries of $210,000 each (*id*. ¶ 37). These salaries later increased to $365,000 in August 2022 (*id*. ¶ 71). Ms. Bomze, a professional realtor, would also receive 0.5% of all Company commissions in addition to 1% of net Company income quarterly and annually, conditioned on the achievement of certain targets (Amend. Compl. ¶ 71).

The "management and operation of the Company and the relationship of the parties" is governed by the Amended and Restated Operating Agreement (NYSCEF 6 [the "Amended OA"]), which the parties executed in February 2023 to replace an earlier Operating Agreement (NYSCEF 80 [the "OA"]) (Amend. Compl. ¶ 66).

Several pertinent provisions contained in both the OA and Amended OA are set forth below, in relevant part:

Section 6.1(d)(iii):

> If a matter (other than those matters set forth in Section 6.1(e)), has been submitted to the Board and no resolution has been reached by reason of the fact that only two (2) Managers have approved such matter (each such circumstance, a "Deadlock"), then (x) during such time that (A) any Class A Unit Holder has any Unreturned Capital Contribution greater than $0 or (B) Hannah Bomze is not serving as the Chief Executive Officer of the Company, such Deadlock shall be resolved by Samuel Ben-Avraham or his designee and (y) during such time that (A) no Class A Unit Holder

**659773/2025   BEN-AVRAHAM, SAMUEL ET AL vs. BOMZE, HANNAH ET AL**    **Page 2 of 16**
**Motion No. 002**

2 of 16

has any Unreturned Capital Contribution greater than $0 and (B) Hannah Bomze is serving as the Chief Executive Officer of the Company, then such Deadlock shall be resolved by Hannah Bomze.

Section 6.1(e):

Notwithstanding anything herein to the contrary, no Manager or officer of the Company or any of its Subsidiaries shall (or have the power or the authority to) approve or undertake any of the following actions or decisions, or shall cause any of the Company or any of its Subsidiaries to, without the prior written approval of Managers representing not less than three-quarters (3/4) of the Managers then in office:

. . .

(xii) enter into (directly or indirectly) any transaction with any member or interest holder of the Company;

. . .

(xiv) make, enter into or amend any compensatory arrangement or understanding with any executive officer of the Company or any of its Subsidiaries or other Affiliates, or with any employee or independent contractor of the Company, its Subsidiaries or other Affiliates whose compensation is commensurate with that of any executive officer of the Company, its Subsidiaries or other Affiliates;

. . .

(xxiv) otherwise enter into any agreement or arrangement, take any action, or make any decision affecting the Company or any of its Subsidiaries or other Affiliates that is not in the ordinary course of the Company's or any of its Subsidiaries' or other Affiliates' respective businesses.

Section 6.1(f):

Each officer shall perform his duties lawfully, in good faith, and in Company's best interest. Hannah Bomze shall serve as the Company's initial Chief Executive Officer and Erez Zarur shall serve as the Company's initial Chief Operating Officer.

**659773/2025   BEN-AVRAHAM, SAMUEL ET AL vs. BOMZE, HANNAH ET AL**
**Motion No.  002**

**Page 3 of 16**

3 of 16

[* 3]

Section 9.2:

> The Board shall keep or cause to be kept complete and accurate books and records of the Company and supporting documentation of the transactions with respect to the conduct of the Company's business. The records shall include, but not limited to, complete and accurate information regarding the state of the business and financial condition of the Company, a copy of the Articles and this Agreement and all amendments to the Articles and this Agreement; a current list of the names and last known business, residence, or mailing addresses of all Unit Holders; and the Company's federal, state or local tax returns. The Company shall permit each Member that owns not less than 15% of the issued and outstanding Units to inspect the books and records of the Company for any purpose reasonably related to such Member's interest as a Member at any reasonable time during normal business hours and upon reasonable advance written notice; provided, however, that the Board shall have the right in its discretion to keep confidential from any Member, for such period of time as the Board deems appropriate, any information that the Board reasonably believes to be in the nature of trade secrets or other information the disclosure of which the Board in good faith believes is not in the best interest of the Company or its business or that the Company is required by law or agreement with a third party to keep confidential.

On October 15, 2025, Ms. Bomze sued the Company, Mr. Ben-Avraham, and Mr. Visdomini seeking to recover commissions she alleges are being wrongfully withheld from her (*see Hannah Bomze et al v H.E.S.C. Company, LLC et al*, Index No. 659146/2025 [the "Related Action"]). Specifically, in that action Ms. Bomze claims entitlement to $1,179,789.56 in brokerage commissions which she contends arose "solely from personal work she performed as a real estate broker and not from management compensation or member distributions" (*id.*, NYSCEF 86, at 1). The filing of the Related Action also revealed to Plaintiffs for the first time that Ms. Bomze and Mr. Zarur had previously withdrawn $1,316,224.44 from the Company on the same asserted basis (*id.*, NYSCEF 1, ¶ 5). The Related Action, seeking summary judgment in lieu of complaint, is also before this Court.

**659773/2025   BEN-AVRAHAM, SAMUEL ET AL vs. BOMZE, HANNAH ET AL**
**Motion No.  002**

**Page 4 of 16**

On November 14, 2025, Mr. Ben Avraham and Mr. Visdomini responded by commencing this action. They promptly sought a temporary restraining order and a preliminary injunction to, among other things, restrain Defendants from withdrawing any further funds from the Company (*see* NYSCEF 3).

On November 24, 2025, the parties executed a joint stipulation resolving Plaintiffs' application for a temporary restraining order (which the Court so ordered) and began preparing for an evidentiary hearing on Plaintiffs' application for a preliminary injunction (*see* NYSCEF 36). Pursuant to the joint stipulation, the parties agreed to promptly provide each other with access to the Company's books and records including books and records prepared and maintained via the Company's accounting software suite, QuickBooks (*id*.). Additionally, Defendants agreed they would not attempt to disburse any more Company assets to pay the disputed commissions to Ms. Bomze, or to pay any attorney's fees incurred by Defendants in this and the Related Action, pending the Court's determination of Plaintiffs' preliminary injunction motion (*id*.).

On December 16, 2025, the Company's Board held a vote on removing Mr. Zarur as an officer of the Company. Mr. Ben-Avraham and Mr. Visdomini voted in favor of removal, while Ms. Bomze and Mr. Zarur voted against, resulting in a deadlock (Amend. Compl. ¶ 187-8). Pursuant to section 6.1(d)(iii) of the Amended OA, Mr. Ben-Avraham broke the deadlock, voting in favor of removal (*id*. ¶ 189-90).

On December 29, 2025, Plaintiffs moved for an expanded preliminary injunction seeking, among other things, an order directing Defendants to pay into the Court the sum of $1,316,224.44 or, to the extent Defendants prove their inability to do so, a lien in that amount over a New York apartment which Ms. Bomze and Mr. Zarur recently acquired (*see* NYSCEF

**659773/2025   BEN-AVRAHAM, SAMUEL ET AL vs. BOMZE, HANNAH ET AL**
**Motion No.  002**

**Page 5 of 16**

[* 5]

77). The expanded preliminary injunction motion also seeks an order restraining Mr. Zarur from acting or purporting to act as a Company officer (*id.*).

Following a brief and targeted discovery period, an evidentiary hearing on Plaintiffs' motion for preliminary injunction was held on February 6, 2026. At the outset of the hearing, the Court denied Defendants' motion to disqualify the law firm Mintz & Gold from acting as Plaintiffs' counsel and Defendants' motion to dismiss under CPLR 3211(a)(7) (*see* NYSCEF 147 ["Transcript"] at 2:20-6:2). The Court then proceeded to hear testimony from five witnesses with respect to the proposed preliminary injunction: Mr. Ben-Avraham, Mr. Visdomini, Ms. Bomze, Mr. Zarur, and Louis Buckworth, a nonparty investor called by Plaintiffs ("Mr. Buckworth"). The Court heard further argument from counsel on February 20, 2026.

## DISCUSSION

To obtain a preliminary injunction under CPLR 6301, a movant must demonstrate: *(1)* a likelihood of ultimate success on the merits, *(2)* a danger of irreparable injury absent an injunction, and *(3)* a balance of equities tipping in their favor (*Aetna Ins. Co. v Capasso*, 75 NY2d 860, 862 [1990]).

### (i)    Likelihood of success on the merits

The Amended Complaint asserts four causes of action. These are:

1. breach of the Amended OA by refusing to provide Plaintiffs complete access to the Company's books and records (the "First Cause of Action");

2. breach of the OA by causing the Company to pay Ms. Bomze $1,316,224.44 in unapproved commissions (the "Second Cause of Action");

3. conversion of Company funds by virtue of the same (the "Third Cause of Action"); and

**659773/2025  BEN-AVRAHAM, SAMUEL ET AL vs. BOMZE, HANNAH ET AL**
**Motion No. 002**

**Page 6 of 16**

6 of 16

4. breach of fiduciary duty through various acts including concealing books and records, using Company funds for non-Company purpose, and paying Ms. Bomze unapproved commissions (the "Fourth Cause of Action")

(NYSCEF 43 ["Amend. Compl."] 136-178).

Each will be addressed in turn.

(i)     *Failure to provide books and records access in breach of the Amended OA*

NY LLC Law 1102(b) provides that "[a]ny member may […] inspect and copy at his or her own expense, for any purpose reasonably related to the member's interest as a member" the company's books and records including "any financial information maintained by the […] company for the three most recent fiscal years and other information regarding the affairs of the […] company as is just and reasonable." This provision is reflected in Section 9.2 of the Amended OA, which entitles each member to "inspect the books and records of the Company for any purpose," including, but not limited to, "complete and accurate information regarding the state of the business and financial condition of the Company."

The record developed during the evidentiary hearing indicates that the Company's books and records, including finances, are prepared and maintained mainly by Mr. Zarur. While Mr. Zarur has afforded Mr. Ben-Avraham and Mr. Visdomini periodic access to this information, Plaintiffs have established a likelihood of success in proving that Mr. Zarur has fallen short of his disclosure obligations under New York law and the Amended OA, though by the time of the evidentiary hearing Defendants had substantially supplemented the information provided. The belated production of basic financial information supports Plaintiffs' position that the prior disclosures were inadequate.

**659773/2025   BEN-AVRAHAM, SAMUEL ET AL vs. BOMZE, HANNAH ET AL**
**Motion No.  002**

**Page 7 of 16**

[* 7]

7 of 16

On cross-examination at the evidentiary hearing, Mr. Zarur testified that, although he was initially willing to afford Plaintiffs unrestricted access to the Company's records, he decided to curtail that access once their relationship began to fragment (Transcript at 136:13-137:1). Mr. Zarur further testified that he was withholding access to QuickBooks as he did not believe it necessary to provide that information (*id*. at 140:15-20; 140:23-141:3). Plaintiffs' statutory and contractual rights as owners of the Company and members of its Board[1] to inspect the Company's books and records, however, are quite broad. This includes access to QuickBooks which, despite stipulating to facilitate such access on November 24, 2025, Mr. Zarur still had not provided.

Accordingly, Plaintiffs have demonstrated a likelihood of success on their First Cause of Action.

(ii)     *Paying Ms. Bomze unapproved commissions in breach of the OA*

The crux of Defendants' defense to the Second Cause of Action, and the basis of Ms. Bomze's claim in the Related Action, is that, in addition to her ownership interest, agreed-upon annual salary, and 0.5% bonus of all Company commissions, Ms. Bomze as a licensed realtor is also entitled to 100% of the sales commissions on transactions which she "handled […] personally" (*see* NYSCEF 108 ["Bomze Aff."] ¶¶ 14-22).

To substantiate this position, Defendants rely on an agreement—the Independent Broker of Record Agreement (NYSCEF 44 [the "IBRA"])—which, they say, Ms. Bomze and Mr. Zarur (on behalf of the Company) signed in August 2019 (*see* Bomze Aff. ¶ 17). The evidence submitted at the hearing indicates that Defendants did not inform Plaintiffs—*i.e.*, the other two

---

[1] The Board members are Mr. Ben-Avraham, Mr. Visdomini, Ms. Bomze, and Mr. Zarur.

**659773/2025   BEN-AVRAHAM, SAMUEL ET AL vs. BOMZE, HANNAH ET AL**     **Page 8 of 16**
**Motion No.  002**

8 of 16

Board members—of the existence of this purported agreement until they sought to enforce it by filing the Related Action in October 2025 (*see* Amend. Compl. ¶ 12).

A threshold dispute on this issue is whether the IBRA is an authentic document that Ms. Bomze and Mr. Zarur signed in August 2019 (as they represent) or is instead, as Defendants contend, a document signed by Ms. Bomze and Mr. Zarur well after the fact and backdated to 2019 in an attempt to provide misleading support for Ms. Bomze's purported entitlement to approximately $2.5 million worth of commissions. In connection with that dispute, the Court ordered Defendants to produce the metadata for the IBRA document to determine when it was created (Transcript at 198:25-199:7). In a letter dated February 17, 2026, Defendants informed the Court that "the IBRA was created in August 2019 using Google Docs, with e-mail accounts and logins and are no longer in existence" and, as such, "any native files or associated metadata from the creation of the IBRA is no longer accessible."[2]

Plaintiffs' position is that the IBRA could not have been signed in August 2019 because it identifies the Company as doing business as "Casa Blanca Realty," whereas, at that time, the Company was still doing business in the name of "Let's Imagine Real Estate" (Amend. Compl. ¶ 6); the Company did not adopt the name "Casa Blanca" until September the following year (*id.*). At the evidentiary hearing, Mr. Ben-Avraham testified that he personally came up with the name during a vacation to Casablanca, Morrocco, in September 2019, and proposed it to Ms. Bomze and Mr. Zarur shortly thereafter (Transcript at 81:22-82:9; 83:6-8).

In response, following the hearing, Defendants submitted (by letter copied to Plaintiffs' counsel) an email dated August 13, 2019, containing a link to a set of tables listing what appear

---

[2] This letter was hand-delivered to the Court and copied to Plaintiffs' counsel via email.

**659773/2025   BEN-AVRAHAM, SAMUEL ET AL vs. BOMZE, HANNAH ET AL**          **Page 9 of 16**
**Motion No.  002**

9 of 16

to be prospective future Company names.[3] Unlike with their own IBRA document, Defendants did manage to obtain the metadata for this document, which reflects a creation date of July 2019. Putting the evidentiary issue aside, the document tendered by Defendants is not persuasive on the point Defendants seek to make. The document includes a spreadsheet with 440 potential names for the Company. The name "Casa Blanca" appears once without any notable emphasis. Defendants offer no contemporaneous evidence that they, Plaintiffs, or anyone else at the Company focused on that name at the time, much less that they were sufficiently confident of its ultimate adoption that they could reasonably draft the IBRA with the Company doing business as "Casa Blanca" within a few days of receiving the spreadsheet.

At the same time, Mr. Ben-Avraham's testimony that he conceived of the name in September 2019 is not supported by contemporaneous evidence either, though may ultimately be supported by travel documents. At this point, it is plausible—though not yet proven—that the IBRA was not in fact signed in 2019 but was instead created later and backdated.

In any event, even if the IBRA *was* signed by Ms. Bomze and Mr. Zarur in August 2019, Plaintiffs have shown they are likely to succeed on their claim that the IBRA is unenforceable under the terms of the OA, the governing agreement at the time. Specifically, Plaintiffs have made a sufficient showing that the IBRA likely falls within at least one of the several categories of decisions that required the consent of three-quarters (3/4) of Managers in order to be effective (*see e.g.,* OA, Section 6[e][xii], [xiv], [xxiv]).[4] It is undisputed that the IBRA was executed

---

[3] Defendants sought to introduce this document at the evidentiary hearing but, absent a hard copy, the Court declined to permit them to use it by sharing counsel's computer with the witness on the stand as no other parties or the Court would have been able to follow.

[4] The term "Managers" is used synonymously with the members of the Company's Board: namely, Mr. Ben-Avraham, Mr. Visdomini, Ms. Bomze, and Mr. Zarur.

**659773/2025   BEN-AVRAHAM, SAMUEL ET AL vs. BOMZE, HANNAH ET AL**                    **Page 10 of 16**
**Motion No.  002**

10 of 16

without the knowledge or approval of Mr. Ben Avraham and Mr. Visdomini who, as noted above, did not learn of its existence until Ms. Bomze filed the Related Action in October 2025 (*see* Amend. Compl. ¶ 12).

Defendants seek to sidestep this restriction by contending that Ms. Bomze was acting in her personal, rather than managerial, capacity when she worked on the transactions for which she now claims entitlement to 100% commission (*see* Bomze Aff. ¶¶ 18-22). As comparisons, Plaintiffs note that the Company's general real estate agents received their own commissions (subject to the Company's share), while Mr. Buckworth received 85% of commissions from deals he personally facilitated (*id.* ¶ 31). Ms. Bomze also testified forcefully and earnestly about a realtor's right to receive compensation for her efforts (*e.g.*, Transcript at 191:11-20; 195:11-17). These arguments, while potentially persuasive in the absence of contrary contractual commitments, are unavailing here.

Unlike Mr. Buckworth, who signed a subscription agreement to acquire 2.5% of the Company and receives no salary (Amend. Compl. ¶ 20), and unlike the agents whose compensation is derived solely from the transactions they handle (*id.* ¶ 55), Ms. Bomze holds a 26.08% ownership interest in the Company and receives an annual salary of $365,000 (Compl. ¶ 34). More importantly, unlike both the agents and Mr. Buckworth, Ms. Bomze is a Manager of the Company and a signatory to the OA and Amended OA. Pursuant to Section 6.1(e) of those agreements, any transaction or compensatory arrangements for her benefit (unlike those for the benefit of agents or Mr. Buckworth) must be approved by three-quarters (3/4) of the members of the Board. To be sure, Ms. Bomze could have sought to negotiate a separate, properly approved

**659773/2025   BEN-AVRAHAM, SAMUEL ET AL vs. BOMZE, HANNAH ET AL**
**Motion No.  002**

**Page 11 of 16**

11 of 16

agreement with the Company granting her a greater percentage of commissions on transactions she personally facilitated. However, no such agreement has been presented.[5]

In sum, on the current record, Plaintiffs have shown a reasonable likelihood of success on their Second Cause of Action to the extent that the IBRA, even assuming it is an authentic document created in 2019, is unenforceable under the terms of the OA.

(iii)     *Conversion of $1,316,224.44 withdrawn from the Company's primary bank account*

Moving to the Third Cause of Action, Plaintiffs have not at this stage established a likelihood of success on the merits of their conversion claim, which is likely duplicative of their Section Cause of Action based on breach of the OA (*see Sebastian Holdings, Inc. v Deutsche Bank, AG.*, 108 AD3d 433, 433 [1st Dept 2013]).

(iv)     *Breach of fiduciary duty*

Not so as to the Fourth Cause of Action for breach of fiduciary duty. It is well-settled that a manager of a limited liability company owes fiduciary duties to the company including the duties of loyalty and care, as well as a duty to refrain from unauthorized self-dealing (*see* NY

---

[5] Instead, Defendants cite an exclusive sales agreement relating to the 2022 sale of Mr. Ben-Avraham's apartment (DX-4), which generated approximately $600,000 of the commissions that Ms. Bomze claims as her own. However, although the agreement bears the signature of Ms. Bomze, the signature line identifies her as the "Casa Blanca Real Estate Authorized Signatory," rather than as Ms. Bomze in her personal capacity. Following the evidentiary hearing, Defendants submitted additional correspondence concerning the sale of Mr. Ben-Avraham's apartment which, they say, further demonstrates that Ms. Bomze was acting in an individual capacity. This evidence is no more persuasive. The correspondence reflects Ms. Bomze using her Company email address and refers to "Ms. Bomze *and her team*" (*emphasis added*). These exhibits, even if admissible, do not disturb the assessment discussed above as to Plaintiffs' likelihood of success. Moreover, the evidence presented at the hearing indicated that Mr. Ben-Avraham chose to sell his apartment through the Company so that the *Company* could benefit from the commission. By contrast, under Ms. Bomze's interpretation, the Company could actually *lose* money on the transaction because it had separately agreed to pay Ms. Bomze a 0.5% on all transactions, which would lead to a total effective commission of 100.05%.

**659773/2025   BEN-AVRAHAM, SAMUEL ET AL vs. BOMZE, HANNAH ET AL**
**Motion No.  002**

Page 12 of 16

12 of 16

LLC Law 409[a] [a manager "shall perform his or her duties […] in good faith and with that degree of care that an ordinary prudent person in a like position would use under similar circumstances"]; *see similarly* Amended OA, Section 6.1(f) ["[e]ach officer should perform his duties lawfully, in good faith, and in the Company's best interests"]).

Plaintiffs have demonstrated a likelihood of success on their claim that Ms. Bomze and Mr. Zarur breached their fiduciary duties by distributing more than one million dollars to Ms. Bomze without notice to Mr. Ben-Avraham and Mr. Visdomini purportedly pursuant to a disputed brokerage agreement Defendants agreed between themselves. That was a related party transaction between spouses and likely would not be entitled to business judgment deference but would instead have to be measured under an 'entire fairness' standard, a heavy burden unlikely to be satisfied by Defendants on these facts.

Additionally, Ms. Bomze testified on cross-examination that she "loaned" approximately $2.5 million of "her" commissions to the Company to assist with cash flow until she eventually exercised her right to repayment in 2025 (Transcript at 204:3-7). However, the Company's contemporaneous financial records—prepared by or under the direction of Mr. Zarur—show the amounts booked as Company revenue and *profit*, rather than as a loan (JX-36, 37). Those figures were also included in a presentation prepared to attract additional investors (PX-22). It follows, therefore, that *if* Ms. Bomze's claim of personal entitlement to the money was correct (which as noted above, it likely is not), both Mr. Zarur and Mr. Bomze likely would be responsible for knowingly misrepresenting the Company's financial condition to its Managers and to existing and prospective investors in the material amount of $2.5 million, conduct that could expose the Company to liability. This conduct provides an additional basis for concluding that Plaintiffs have established a likelihood of successfully proving a breach of fiduciary duty.

**659773/2025   BEN-AVRAHAM, SAMUEL ET AL vs. BOMZE, HANNAH ET AL**
**Motion No.  002**

**Page 13 of 16**

13 of 16

However, Plaintiffs did not (yet) establish a likelihood of success with respect to their allegation that Defendants breached their fiduciary duties by using Company funds for personal expenses. While the record contains some evidence to suggest that Ms. Bomze and Mr. Zarur used the Company's credit card to pay for certain personal expenses (*see* Amend. Compl. ¶ 99; Transcript 33:17-34:5), the evidence at this stage does not warrant injunctive relief on that basis alone.

Accordingly, Plaintiffs have established a likelihood of success on a portion, but not the entirety, of their Fourth Cause of Action.

Finally, Plaintiffs have established a likelihood of success in establishing that Mr. Zarur's removal from the Board was a valid corporate act pursuant to section 6.1(d)(iii) of the Amended OA.

### (ii) Danger of irreparable injury

Turning to the second element of the analysis, Plaintiffs have demonstrated a sufficient risk of irreparable injury absent injunctive relief.

Defendants are correct that, generally, a preliminary injunction is unavailable where the alleged injury can be adequately compensated by an award of monetary damages (*see Zodkevitch v Feibush*, 49 AD3d 424, 425 [2008]). However, although Ms. Bomze and Mr. Zarur withdrew a sum of money that, at least in theory, could be remedied by monetary damages, the inquiry does not stop there. Plaintiffs averred that the Company currently had (at the time of the Amended Complaint) approximately $100,000 in cash on hand (Amend. Compl. ¶ 11), while Ms. Bomze maintains her entitlement to an *additional* approximately $1.2 million on top of the substantial amount already withdrawn. Permitting Ms. Bomze and Mr. Zarur to make any further withdrawals creates a risk that the Company could be left in a potentially irreversible position.

**659773/2025   BEN-AVRAHAM, SAMUEL ET AL vs. BOMZE, HANNAH ET AL**
**Motion No.  002**

**Page 14 of 16**

14 of 16

That risk is compounded by the fact that Mr. Ben-Avraham and Mr. Visdomini currently lack full access to the Company's books and records, preventing them from participating in the Company's management.

### (iii) Balance of the equities

Finally, the balance of equities favors granting relief. Plaintiffs have demonstrated that preliminary relief is necessary to protect not only their own interests but also the interests of the Company and its other stakeholders. Defendants have not demonstrated why the balance of equities should weigh against injunctive relief.

Accordingly, it is

**ORDERED** that the motion of Plaintiffs Samuel Ben-Avraham and Christian Visdomini for an expanded preliminary injunction is **GRANTED**, as follows:

- Defendants shall facilitate ongoing, complete, and regular access for Mr. Ben-Avraham and Mr. Visdomini to the Company's books and records, including QuickBooks and related financial materials. This must be installed as a matter of regular process, rather than in the manner of the *ad hoc* fixes that were implemented to provide data to plaintiffs ahead of the evidentiary hearing.

- Defendants shall pay into the Court the sum of $1,326,224.44 within twenty-one (21) days of the date of this Order; failing their doing so, the Company shall have a lien in the amount of $1,326,224.44 over Plaintiffs' recently purchased apartment.

- Defendants are restrained from using Company funds, without the prior written approval of plaintiffs, to pay *(a)* any commissions to Ms. Bomze including any of the commissions to which she claims entitlement in the related action, *(b)* Ms.

**659773/2025 BEN-AVRAHAM, SAMUEL ET AL vs. BOMZE, HANNAH ET AL**
**Motion No. 002**

**Page 15 of 16**

15 of 16

Bomze or Mr. Zarur any compensation other than that to which they are contractually entitled, or *(c)* attorneys' fees incurred in connection with this or the Related Action.

- Mr. Zarur is restrained from acting or purporting to act as an officer of the Company.

- Defendants are restrained from interfering with the Company's use and occupancy of the office located at 10 Hubert Street; and it is further

**ORDERED** that, by March 27, 2026, the parties file brief letters on NYSCEF addressing the amount of an undertaking movants shall give pursuant to CPLR 6312(b) to protect against loss to the restrained parties in the event the injunction is later determined to have been improvidently granted.

This constitutes the Decision and Order of the Court.

20260318134450JMC0HEN642A64EDB9FD4584A8288915622E61C7

| **3/18/2026** | |
| --- | --- |
| **DATE** | **JOEL M. COHEN, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- | --- |
| | X | GRANTED | DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

659773/2025   BEN-AVRAHAM, SAMUEL ET AL vs. BOMZE, HANNAH ET AL
Motion No. 002

Page 16 of 16

16 of 16